HALL, Circuit Judge, concurring in part and dissenting in part:
This case will proceed in the district court on remand: a result with which I concur for the reasons articulated below. I respectfully dissent, however, from the analysis by which the majority arrived at its decision to remand. Unlike the majority, I would hold that we have appellate jurisdiction to decide the defendants' interlocutory appeal from the district court's determination that they are not entitled to qualified immunity. I would then affirm that determination in toto and thus return the case to the district court for further proceedings. I part company with the majority when it concludes that factual issues concerning whether the conditions of Reyes's post-release supervision ("PRS") were more onerous than the conditions to which she would have otherwise been subjected on conditional release preclude interlocutory appellate jurisdiction.
* * *
At issue here are two periods during which Reyes was subjected to PRS: (1) the period between her October 5, 2007 release from prison and the November 27, 2008 expiration of her determinate sentences and (2) the period between that expiration and her judicial resentencing on December 5, 2008. As to the latter period, the majority concludes that the defendants were "plainly" not entitled to qualified immunity. See Op. at 103-04. I fully agree. I disagree, however, that we are without jurisdiction to review whether the defendants were entitled to qualified immunity for the former period, and to that extent, I dissent.
We have previously "held that [ (1) ] the New York State Department of Correctional Services's ('DOCS') practice of administratively adding a term of [PRS] to sentences in which PRS had not been imposed by the sentencing judge and [ (2) ] the New York State Division of Parole's ('DOP') practice of enforcing the administratively added PRS terms violated the Constitution." Betances v. Fischer , 837 F.3d 162, 164 (2d Cir. 2016). Despite Reyes's having not been judicially sentenced to a term of PRS, DOCS unilaterally imposed a term of PRS on her. Second, Reyes was released on October 5, 2007, after which that DOCS-imposed term of PRS was enforced. See People v. Williams , 19 N.Y.3d 100, 104, 945 N.Y.S.2d 629, 968 N.E.2d 983 (2012) ("Such a defendant who is conditionally released immediately commences serving the imposed term of PRS and the remaining term of incarceration is 'held in abeyance' during this period." (quoting N.Y. Penal Law § 70.45(5) )). Based on those two facts, this would be the end of the story for this interlocutory appeal for me, and I would affirm the determination that the defendants were not entitled to qualified immunity.
The wrinkle here, which causes the divergence between the majority and me, is that absent the unlawfully imposed PRS term, Reyes would still have been subjected to a term of conditional release until the November 27, 2008 expiration of her determinate sentences. The majority reads this to raise issues of material fact concerning *108 whether the conditions of Reyes's PRS were more onerous than those of conditional release would have been. See Op. at 105. Relying on our decision in Hassell v. Fischer , 879 F.3d 41 (2d Cir. 2018), the majority has determined that these issues deprive us of jurisdiction to answer the qualified-immunity question because, in the majority's view, only if the conditions of PRS were harsher than those of conditional release would Reyes suffer a cognizable due process violation.[1]
I do not disagree that factual issues here persist. In my view, however, those issues go to whether Reyes can demonstrate damages as a result of the due process violation already inflicted, not to whether she has suffered a deprivation of due process in the first instance. "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, ... the denial of due process should be actionable for nominal damages without proof of actual injury." See Carey v. Piphus , 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).[2]
The majority sidesteps these principles by relying on language from our recent decision in Hassell , in which we addressed, among other things, these same defendants' qualified immunity for the period between Hassell's release and the expiration of his determinate sentence. To be sure, there we said that "Hassell has made no showing that the conditions of his PRS term were in any respect more onerous than those of conditional release would have been. Without any showing of an adverse consequence during [the relevant period], Hassell has not suffered a denial of his due process rights during that period." Hassell , 879 F.3d at 52 (citing United States v. Ray , 578 F.3d 184, 200 (2d Cir. 2009) ). The majority reads this language as having imposed a "more onerous" requirement on claims for deprivation of due process related to PRS imposed and enforced before the expiration of a term of imprisonment. Hassell admittedly is susceptible to the reading attributed to it by the majority. But Hassell sends mixed signals.
On the one hand, the language quoted above does indeed lead one to believe that an element of a PRS due process claim is that the conditions imposed by PRS must be more onerous than those to which a prisoner would have otherwise been subjected.
*109 There is also the fact that Hassell vacated even the district court's grant of nominal damages awarded for imposition of PRS during the relevant period, further suggesting that Hassell had not suffered a cognizable deprivation of due process. See Carey , 435 U.S. at 266, 98 S.Ct. 1042.
On the other hand, the quoted language from the text of Hassell comes after the opinion's conclusion that the defendants were not entitled to qualified immunity during the relevant period, see Hassell , 879 F.3d at 50-51, a conclusion that necessarily entails findings both that the defendants did violate Hassell's constitutional rights and that those rights were clearly established, see, e.g. , Jones v. Parmley , 465 F.3d 46, 55 (2d Cir. 2006). And as the Supreme Court has already told us, the denial of due process is the denial of an "absolute" right, entitling the plaintiff to at least nominal damages. See Carey , 435 U.S. at 266, 98 S.Ct. 1042.
What is more, Hassell can be read to present its supposed "more onerous" requirement as an afterthought; it presents no rationale as to why an individual's liberty interest in being free from the administrative (non-judicial) imposition of PRS in the first instance, see Betances , 837 F.3d at 164, might become non-existent when, as here, that individual would otherwise be subjected to conditional release.[3] This is perhaps unsurprising given the briefing in that case: Hassell argued that he suffered a deprivation of due process only after the expiration of his determinate sentence, not during the period between his release on PRS and the expiration of his sentence. See Brief of Plaintiff-Appellant-Cross Appellee at 22-26, Hassell , 879 F.3d 41 (Nos. 16-2835 (L), 16-3641 (XAP)). Said differently, Hassell did not even argue that he was deprived of due process by being subjected to administratively imposed PRS when he otherwise would have been subjected to conditional release, and the Court in Hassell thus did not have the benefit of full adversarial briefing on this issue.
These conflicting signals do create some uncertainty as to the contours of a due process claim arising from administratively imposed PRS, uncertainty that the majority does not directly acknowledge. While the majority's holding is certainly a reasonable resolution of this uncertainty, I would not resolve the issue in this manner without facing it head on. And facing it head on, I see no support in our precedent for imposing this new requirement: Hassell does not purport to add anything new, and without a much clearer indication than it presents, I would not assume it did so. Further, because the reading the majority gives Hassell is fundamentally at odds with Hassell 's reasoning and structure, I must conclude that Hassell in fact did not intend to impose any "more onerous" requirement on PSR claims like the one at issue here.[4] The admittedly persisting factual *110 issues identified by the majority go to Reyes's ability to demonstrate damages, not to whether her claim is cognizable on appeal of a qualified-immunity challenge and not to whether we thus lack appellate jurisdiction to review that challenge. Determining that we do have jurisdiction to consider that challenge on appeal, I, would affirm in full the district court's denial of qualified immunity.
Functionally, the result reached by the majority is the same here: this case will proceed. But I would ensure that a future case does not stumble needlessly, and perhaps with a more deleterious result, over this issue. I concur in part and dissent in part.

As the majority correctly notes, our jurisdiction over this interlocutory appeal is circumscribed in that we cannot resolve issues of fact. See, e.g. , Bolmer v. Oliveira , 594 F.3d 134, 140-41 (2d Cir. 2010). Thus, if the majority is correct that having been subjected to more onerous conditions while on PRS is an element of a PRS due process claim, then disputed factual issues pertaining to the conditions of Reyes's release would indeed deprive us of jurisdiction to answer the qualified-immunity question with respect to the period during which Reyes would have otherwise been subjected to conditional release. That is, our jurisdiction depends on whether, accepting her version of the facts, Reyes has adequately established a cognizable deprivation of due process.

Accord Kerman v. City of New York , 374 F.3d 93, 123 (2d Cir. 2004) ("For example, when a defendant has deprived the plaintiff of liberty or property without affording him a hearing as required by the Due Process Clause, but the defendant proves that the adverse action would have been taken even if a proper and timely hearing had been held, the plaintiff has not proved compensable injury and is entitled only to nominal damages."); Robinson v. Cattaraugus Cty. , 147 F.3d 153, 162 (2d Cir. 1998) ("If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, the plaintiff is entitled to an award of at least nominal damages as a matter of law.").

By contrast, in the context of due process required for prison discipline, this Court and the Supreme Court have made clear that "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " See Palmer v. Richards , 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner , 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ).

To the extent my reading of Hassell is arguably inconsistent with some of the opinion's language, were I writing for the majority, I would invoke this Court's "mini en banc" process to issue an opinion clarifying that, one, Hassell did not impose an additional "more onerous" requirement for claims in circumstances such as these and, two, that Hassell 's vacatur of nominal damages was error. See, e.g. , Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd. , 585 F.3d 58, 67 & n.9 (2d Cir. 2009) (describing mini en banc process); see also Jon O. Newman, The Second Circuit Review-1987-1988 Term: Foreword: In Banc Practice in the Second Circuit, 1984-1988 , 55 BROOK. L. REV. 355, 367-68 (1989).